SO ORDERED.

SIGNED this 11th day of February, 2016.




UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| In re:<br><br>CURTIS EUGENE REID,<br><br>    Debtor.<br>_____<br>BILL CARTER,<br><br>    Plaintiff<br><br>v.<br><br>CURTIS EUGENE REID,<br><br>    Defendant.<br>_____ | Case No. 14-50721<br><br><br><br><br><br>Adv. Pro. No. 14-06046 |

## MEMORANDUM OPINION AND ORDER

THIS MATTER came before the Court for Trial on November 23, 2015, on Bill Carter's ("Carter") Complaint asserting a claim against Curtis Reid ("Reid") pursuant to 11 U.S.C. § 523(a)(4). Appearing for Carter was Herman Stephens and appearing for Reid was Donald Buie. Additionally, both Carter and Reid appeared and gave testimony. After considering the

1

pleadings, the evidence presented at trial, and the arguments of counsel, this Court concludes that Carter's judgment is nondischargeable for the reasons which follow.

## JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court has jurisdiction to hear and determine.  Pursuant to the analysis in *Stern v. Marshall*, 564 U. S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

## FINDINGS OF FACT

Commencing on or about October 2009, Carter rented a residence from Reid located at 212 Forest Hill Avenue, Winston Salem.  Carter fell behind on his rent payments, and on or about August 14, 2012, Reid filed a summary ejectment action in Forsyth County requesting possession of the property.  On August 22, 2012, a judgment was entered in favor of Reid, finding that Carter was behind on the rent and should be removed.

On September 5, 2012, the Clerk of Superior Court for Forsyth County issued a Writ of Possession, and on September 6, 2012, that Writ of Possession of real property was mailed to Carter pursuant to N.C. Gen. Stat. § 1-313(4).  On September 12, 2012, the Writ of Possession was served by the Sheriff of Forsyth County.  Carter was not present when the Writ was served and the Sheriff padlocked the premises.  The new padlock allowed only Reid to access the property.

On the same day that the Sheriff served the Writ of Possession, Reid, as landlord, signed a statement which provided as follows: "I do not wish the Forsyth County Sheriff's office to

remove the tenant's personal property from the premises[.] I am allowing the tenant's property to remain on the premises, in accordance with applicable North Carolina law." Under then applicable North Carolina law, Carter had ten days from September 12, 2012 to request possession of his personal property, and Reid was required to release the property during regular business hours or at an otherwise mutually agreeable time. *See* N.C. Gen. Stat. § 42-25.9(g) (1999); N.C. Gen. Stat. § 42-36.2(b) (1999).[1]

The parties disagree as to what happened next. According to Reid, Carter made no effort or attempt to collect his belongings. Reid testified that he never received a single phone call or voice mail from Carter over the next ten days. Reid also contends that he unlocked the padlock on the home every day during regular business hours, so that Carter could collect his belongings if he felt so inclined.[2] Reid contends that Carter had every opportunity to reclaim his items, but in as much as Carter made no attempt to do so, Reid hired an individual to help clean the property and to dispose of the property at a landfill. Ultimately, Reid disposed of the property on the afternoon of Monday, September 24, 2012.

Carter presents a very different set of facts. According to Carter, he returned home on September 12, 2012 to find the property padlocked.[3] From September 12 through September 24, Carter called Reid's cell phone numerous times to make arrangements to collect his belongings. Reid never answered his calls or returned his messages. Feeling that Reid was ignoring his calls, Carter asked his niece to call Reid on his behalf. Carter's niece was able to reach Reid and

---

[1] These sections were amended, effective September 1, 2013, to change the ten-day period to a seven-day period.
[2] During the ten-day period, Reid noticed that certain items were removed, such as speakers, a television, and a storm door, but he had no knowledge as to who took the items. He also noticed that Carter's prescription medications disappeared from the premises.
[3] He had been present at the eviction hearing, knew he had to vacate the premises, and was in the process of packing his belongings at the time.

3

requested that her uncle be allowed to get his belongings, particularly his medications.[4] According to Carter, Reid agreed to meet at the house on Friday, September 21, 2012. Carter was present that day with a moving truck and his nephew, who had agreed to assist with the move. Reid never showed up at the property, and Carter continued in his attempts to reach Reid. Carter was not successful. On September 23, 2012, Carter returned to the house and saw through a window that all of his personal property had been removed.

Unable to retrieve his property,[5] Carter sued Reid in state court, alleging that Reid's actions violated N.C. Gen. Stat. § 75-1.1(a).[6] The court entered an entry of default against Reid when he failed to answer the complaint. Reid did not attempt to set aside the entry of default. He did, however, appear at a hearing on Carter's request for default judgment. At this hearing, Reid challenged the damages alleged by Carter. Following the hearing, the court found that Carter's damages were $10,000, which the court trebled under N.C. Gen. Stat. § 75-16. The court also awarded Carter attorney fees of $7,000, for a total award of $37,000.

Reid filed for relief under Chapter 7 on June 27, 2014. Shortly thereafter, on December 23, Carter filed the present action, seeking to declare his $37,000 judgment a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(4).

## DISCUSSION

Nondischargeability claims are generally construed narrowly to protect a debtor's fresh start. *See In re Roundtree*, 478 F.3d 215, 219 (4th Cir. 2007) (citing *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999)). The party claiming an exception to discharge bears the burden of proving

---

[4] Reid does not dispute that he spoke with Carter's niece. Reid's recollection is that the niece asked if her uncle could have access to the premises to collect his medications.

[5] In October 2012, an unknown individual returned the family Bible and personal photographs to Carter.

[6] Specifically, Carter alleged that Reid violated § 42-25.9(g) and § 42-36.2(b). Under N.C. Gen. Stat. §1-593 and Rule 6(a) of the North Carolina Rules of Civil Procedure, the ten-day period did not expire until the end of the day on Monday, September 24, 2012.

by a preponderance of the evidence that the claim is not subject to discharge.  *Grogan v. Garner*, 498 U.S. 279, 285-86 (1991).  In this case, § 523(a)(4) is at issue, which provides that debts arising from embezzlement or larceny are not discharged in bankruptcy.  11 U.S.C. § 523(a)(4); *see also Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1760 (2013) (explaining that a debt may be nondischargeable under 11 U.S.C. § 523(a)(4) without the existence of a fiduciary duty).

"Whether embezzlement or larceny exist for the purposes of § 523(a)(4) is governed by the federal common law."  *Foreign Affairs Serv., Inc. v. Pittman (In re Pittman)*, 442 B.R. 485, 492 (Bankr. W.D.Va. 2010).  Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."  *Livingstone College, Inc. v. Deberry (In re Deberry)*, Ch. 7 Case No. 09-12428, Adv. No. 10-02055, 2012 WL 1463598, at *5 (Bankr. M.D. N. C. Apr. 27, 2012) (internal citations omitted); *In re Pittman,* 442 B.R. at 492; *see also Great Am. Ins. Co. v. Storms (In re Storms)*, 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983) (explaining that larceny requires the original taking of the property to have been unlawful, whereas embezzlement occurs after one has lawfully come into possession of the property).  While embezzlement is more commonly seen with money for funds, tangible personal property also can be embezzled.  *E.g.*, *Lawson v. Conley (In re Conley)*, 482 B.R. 191, 210 (Bank. S. D. Ohio 2012).

The elements of embezzlement are: "(1) entrustment to the debtor of (2) property (3) of another (4) which the debtor appropriates for his or her own use (5) with intent to defraud."  *CM P'ship v. Groover (In re Groover)*, No. 03-51013, 03-6103W, 2004 WL 212948, at *7 (Bankr. M.D.N.C. Jan. 16, 2004); *see Cont'l Casualty Co. v. York (In re York)*, 205 B.R. 759, 764 (E.D.N.C. 1997) (describing embezzlement as (1) the fraudulent, or knowing and willful, (2) misapplication or conversion of (3) property (4) which belongs to another, (5) by a person to

5

whom such property has been entrusted or into whose hands it has lawfully come).  A bailee of property may be guilty of embezzlement if he or she (1) disposes of the property, (2) without authorization, and (3) with the intent never to return it.  *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 206 (Bankr. M.D. Tenn. 1982) (finding a debt for certain livestock nondischargeable under § 523(a)(4), when the individual who had been charged with the care and custody of the animals either sold them or placed them into the custody of another, without permission, and with the intent to rid himself of them as quickly as possible).

In the matter before the Court, Reid had the legal right to padlock the property and to possess Carter's personal property, at least on a temporary basis.  While Reid had the legal right to hold the property, he also had a legal obligation to release the property to Carter.  Reid's testimony that Carter made no demand for his personal property is not credible, particularly in light of the undisputed testimony that Carter had his niece call on his behalf.  Reid actively ignored Carter and disposed of the property, without authorization, before the expiration of the ten-day period.  Therefore, Reid, as the non-owner of the property, appropriated or converted the property to a use other than that to which it was entrusted.  *See Nat'l Bank of Commerce v. Hoffman (In re Hoffman)*, 70 B.R. 155, 163 (Bankr. W.D. Ark. 1986) (explaining that embezzlement occurs when one wrongfully deprives an owner of his property, regardless as to whether or not the property is sold; noting that "embezzlement requires only proof of a wrongful taking and deprivation from the rightful owner").

The totality of the circumstances indicates that Reid's actions involved moral turpitude, or an intentional wrong-doing.  *See Caviness v. Lane* (*In re Lane*), 445 B.R. 555 (Bankr. E. D. Va. 2011) (explaining that fraudulent intent may be inferred from the totality of circumstances and the conduct of the Debtor); *see also In re Aman,* 498 B.R. 592 (Bankr. N. D. W. Va. 2013).

Reid screened and ignored Carter's calls, failed to allow Carter to access his property, and prematurely transported the property to a dump.  While Reid might not have had the financial means to rent a storage facility for Carter's property, he owned a truck and could have readily stored some items of personal property, especially those items of seemingly great sentimental value, if he needed the residence vacant before the expiration of the ten-day period.  Instead of allowing Carter to collect even a few of his belongings, Reid took the drastic, premature, and unilateral action of transporting the property to a place from which it could not be recovered.  Indeed, Reid disposed of the property, without authorization, and with the intent to never return it to Carter.  Therefore, the Court finds that the elements under 11 U.S.C. § 523(a)(4) for embezzlement are met, and as such, the Debtor may not discharge the Claim.  The Court will enter an order declaring the Claim nondischargeable, consistent with the findings and conclusions as set for herein.[7]

[END OF DOCUMENT]

---

[7] All parties agree that the Court cannot look behind the state court judgment of $37,000 and that this Court may only determine dischargeability of the debt.

SERVICE LIST

**BILL CARTER**
183 WHITE PLAINS LANE
SPARTA, NC 28675

**Curtis Eugene Reid**
212 Forest Hill Avenue
Winston-Salem, NC 27105

**Donald Ray Buie**
823 West Fifth Street
Post Office Box 20031
Winston-Salem, NC 27120-0031

**Herman L. Stephens**
Law Office of Herman L. Stephens
200 W. First St.
Winston-Salem, NC 27101

William Miller
US Bankruptcy Administrator

**W. Joseph Burns**
Trustee
PO Box 21433
Winston-Salem, NC 27120-1433